# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARKUS EVANS,

        Plaintiff,

  v.                                      Case No. 17-CV-1133

TODD DICKAU, JAMES NOVOTNY,
CASSANDRA JOSHUA, KYLE DULAN,
MATTHEW PARADISE, THOMAS TRATTIN,
SARAH WRONSKI, LEGERS LESTER,
MARY SAWCZUK, SGT. LIEBENTHAL,
SGT. FERGOT, ABIE DOUGLAS, JOHN NELSON,
ROBERT WORZALLA, TUSSELL MEWHORTER,
LT. CARLSON, CPT. ELLIOTT,
CPT. JONAS, CPT. RAWOLINSKI,
KEVIN NYKLEWICA, JOHN CUMMINGS,
DONALD STONEFELD, RACHELE KLASSY,
BEVERLY FELTEN, BRIDGETTE LINDEMANN,
TONYA NAJAM, JOY PARKS, JAMES WILLIAMS,
CHRIS LUBUS, TINA WATTS, GREORY BARILLARI,
AIMEE TURNER, FLORENTINE SANCHEZ,
ONEIDA EDWARDS, CAROLYN EXUM,
DANIELLE GAJDOSIK, JIEIRE VANCE,
CALVIN SMITH, and KENYON KIRKSEY,

        Defendants.

## ORDER AND RECOMMENDATION

On January 30, 2017, pro se plaintiff Markus Evans filed a complaint in the U.S. District Court for the Western District of Wisconsin under 42 U.S.C. § 1983, alleging that various defendants violated his civil rights while he was housed as a pretrial detainee at Milwaukee County Jail. (ECF No. 1.) The case was subsequently

transferred to the U.S. District Court for the Eastern District of Wisconsin. (ECF No. 12.) It was assigned to this court. (ECF No. 15.)

On January 30, 2018, Evans amended his complaint (ECF No.20), and a couple of weeks later corrected that amended complaint by substituting a name for a Doe defendant (ECF No.21). Upon review of the amended complaint and finding that it failed to state a claim, this court allowed Evans to file a second amended complaint. (ECF No. 22.) Evans took advantage of that opportunity and filed a second amended complaint on May 1, 2018. (ECF No. 23.) The case was then referred to District Judge Lynn Adelman for the limited purpose of screening the complaint because not all parties had had the opportunity to consent to this court's jurisdiction. Judge Adelman screened Evans's second amended complaint on October 11, 2018, and allowed him to proceed on Fourteenth Amendment due process claims against Abie Douglas, Todd Dickau, Kenyon Kirksey, Kevin Nyklewicz, Kyle Cummings, James Novotny, Jieire Vance, and Calvin Smith. (ECF No. 27 at 5-6.) After the defendants were served with that order and the second amended complaint, the case was permanently reassigned to Judge Adelman because not all parties consented to this court's jurisdiction. Judge Adelman subsequently referred the case back to this court for the handling of all pretrial matters. (ECF No. 33.)

Thereafter, the defendants filed their answer to the second amended complaint (ECF No. 40), and this court entered a scheduling order (ECF No. 42). After a telephonic hearing with Evans regarding the identification of one of the named

defendants he had been allowed to proceed against, this court allowed Evans to file a third amended complaint correcting the name of the defendant. (ECF Nos. 45.)

On February 12, 2019, Evans was granted an extension of time to file his third amended complaint. (ECF No. 47.) On February 21, 2019, Evans filed a motion for leave to file a third amended complaint in which he not only corrects the name of the defendant as the court allowed but also names several new defendants and puts forth new claims. (ECF No. 48.) Evans asserts in his motion that he has only recently been able to secure help from an inmate, who had previously helped him but was moved to a different correctional institution. He says that, after providing the inmate assisting him with his discovery, he realized he had made a mistake in not naming, or naming but not clarifying, the "actions and even intentions" of several defendants. (*Id.* at 3.)

The defendants argue that the motion should be denied because Evans has not shown good cause for the amendment given that he previously was allowed to amend his complaint. (ECF No. 51.) They also assert that, even if Evans were allowed to amend his complaint for a third time, it would be futile. His new claims are unrelated to the claim on which he has been allowed to proceed, and, therefore, they violate Federal Rule of Civil Procedure 20.

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to file an amended complaint "shall be freely given when justice so requires." The Supreme Court has explained the meaning of "freely given" as used in Rule 15(a) by stating:

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by

> amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment,
> futility of the amendment, etc. - the leave sought should, as
> the rules require, be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Evans's third amended complaint seeks to add new claims and new defendants, some of whom Judge Adelman dismissed previously because Evans had failed to state a claim against them. After providing the additional detail that Evans acknowledges he failed to provide in his second amended complaint, the court finds that these additional claims against the new defendants arise from the same "series of transactions and occurrences" as the claim on which Evans had been allowed to proceed. Fed. R. Civ. Pro 20(a)(1)(A). Because the pro se plaintiff has only recently been able to secure help from another inmate, the court will grant Evans's motion for leave to file a third amended complaint. The court will now screen that complaint in accordance with 28 U.S.C. § 1915A(a).

In light of Evans's motion, the defendants moved to stay the amended scheduling order deadlines pending the court's decision on Evans's motion. (ECF No. 49.) Because the court is granting Evans's motion, it will also grant the defendants' motion to stay the amended scheduling order.

**Screening the Third Amended Complaint**

The court is required to screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a

4

complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give a plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

*1. Allegations in the Complaint*

Evans alleges that he suffers from and has been hospitalized for various mental illnesses since the age of five or six. (ECF No. 48-1, ¶ 6.) He states that on March 22, 2009, he was assessed as having a "low average verbal IQ estimated at 85" and that in August 2010 he was released from Mendota Mental Hospital after having been there for his mental illnesses. (*Id.*) He says that his doctor there noted that he "suffered from mental problems at a very young age," had been "diagnosed with ADHD, mood disturbance at the age of six," and had been on various medications, including "Ambien, Geodon and Adderall." (*Id.*)

Evans states that, after his release from Mendota, he had a follow-up appointment at Isaac Coggs Mental Health Center, where a Dr. Benson took Evans "off of Geodon and put [him] on five other medications including Ability, Ambian, Zanax, Zoloft, and Benadryl." (ECF No. 48-1, ¶ 6.) The doctor also determined that "when [Evans] is off his medication he becomes increasingly disturbed being progressively more paranoid, at times staring off and not talking to anyone, not sleeping, becoming more delusional and hallucinating but no definite auditory hallucinations." (*Id.*) Additionally, the doctor noted that Evans "had developed suicidal ideations with a suicide attempt on December 15, 2010." (*Id.*)

On December 19, 2010, Evans was arrested for an alleged homicide and taken to Milwaukee County Jail. (ECF No. 48-1, ¶ 5.) Evans was housed alone in a single pod. (*Id.*, ¶ 7.) He states that from January 10, 2011, to May 29, 2011, he suffered "dehumanizing abusive conditions" as a pretrial detainee at the jail despite staff

6

knowing about his long history of mental illness. (*Id.*, ¶¶ 31(a), 34.) Evans specifically alleges he suffered the following events.

On December 25, 2010, Bridgette Lindemann, a psychology social worker, noted that Lt. Nelson told her that he had informed the PSW—an acronym which the court understands Evans to use to refer to the psychological services unit as a whole rather than to any particular individual—that Evans had requested his medications. (ECF No. 48-1, ¶ 33.) Lindemann noted that the PSW "inform[ed] Nelson that inmate was assessed by Dr. Stonefeld already and no meds were ordered possibly pending verification of what he was taking in the community." (*Id.*)

On January 11, 2011, Sandra Virgo, a registered nurse, noted in her report on Evans that he was not verballing responding to officers calling his name or to the use of an ammonia inhalant. (ECF No. 48-1, ¶ 7.) She indicated that no medical intervention was needed at that time and that Evans would be evaluated by Tonya Najam, another psychology social worker. (*Id.*)

That same day Evans's mother called and spoke with James Williams, a licensed counseling social worker, about Evans. (ECF No. 48-1, ¶ 8.) She asked whether Evans had received his medication. (*Id.*) Williams told Evans's mother that "[Evans] had stopped taking his medications prior to coming to jail; however, there had been an appointment made for him to see the psychologist." (*Id.*)

Evans's mother also spoke with Tina Watts, another registered nurse. ((ECF No. 48-1, ¶ 8.) Watts noted that, during the call, Evans's mother said she had been informed by another inmate that Evans was "jumping up and down naked and

7

yelling." (*Id.*) Watts wrote in her report of the call that she explained to Evans's mother that, when Watts saw Evans, she found him "lying in bed comfortably; [and] when asked to come to the door, [Evans] sat up looked at [Watts] and lain back down." (*Id.*) Watts further explained to Evans's mother that Sgt. Santiago told her that "[Evans] had been quiet in his cell." (*Id.*) Watts added that she was "still waiting for medical history and diagnosis from Mendota and Lincoln Hills." (*Id.*, ¶ 8.)

On January 13, 2011, Lindemann noted observing Evans "sitting on the edge of his bed with [a] blanket draped over his head." (ECF No. 48-1, ¶ 9.) She wrote that "[Evans] did not respond when his name was called but was seen up and walking toward his cell door with the blanket still over his head a short time later." (*Id.*) She assessed Evans as "malingering." (*Id.*)

On January 18, 2011, Najam noted that she attempted to meet with Evans. (ECF No. 48-1, ¶ 10.) However, he was naked at his cell door, posed in a "fighting stance with arms up, fist clenched, at times punching the cell door, and making deep what sounded like grow[ning] noises." (*Id.*) She said the officers stated that, when Evans first arrived, he was fine and spoke normally with other inmates, "telling them what he did, laughing inappropriately." (*Id.*) She assessed Evans as "not responsive, not stable to remain on pod 4d . . . history of psych med and hospitalizations at Mendota . . . history of ineffective coping, r/o sociopathic tendencies, r/o psychosis." (*Id.*) She planned to have Evans moved to a "special needs unit . . . for further evaluation." (*Id.*)

8

When Najam conducted her rounds the next day, Evans told Najam that he did not want to talk with her. (ECF No. 48-1, ¶ 11.) Evans says that Najam thereafter found Evans to be malingering and changed her plans for him. (*Id.*)

During subsequent wellness checks and medical evaluations by Chris Lubus, Russell MeWhorter, Najam, Dr. Stonefeld, and Deborah Cales, Evans remained in the same cell. (ECF No. 48-1, ¶¶ 12-17.) The officials all generally noted Evans was exhibiting nonresponsive and bizarre behavior, including shaking, but found him to be purposefully acting out, normal, or malingering. (*Id.*)

At some point Evans says security placed him in a suicide gown. (ECF No. 48-1, ¶ 15.) On January 27, 2011, CO Wierzba contacted Lindemann to see if Evans could get his clothes back. (*Id.*) Lindemann responded that Evans was not on suicide watch and therefore should not be in a suicide gown anyway. (*Id.*)

On February 2, 2011, Lindemann noted that Sgt. Hale had contacted the PSW to see if Evans's cell could be inspected. (ECF No. 48-1, ¶ 18.) According to Evans, the cell inspection was ordered by Sgt. Juneau and Sgt. Liebenthal despite their being able to flush Evans's cell toilet remotely. (*Id.*) Lindemann wrote that she told Hale that Evans agreed to cooperate with the cell inspection. (*Id.*) When the inspection began, however, Evans had to be restrained as the toilet in the cell was flushed and the "filthy" cell cleaned out. (*Id.*)

Thereafter, Dr. Stonefeld and Dr. Stephen Slattery continued to assess Evans as "malingering" despite Evans still being described as nonresponsive and exhibiting

9

inappropriate behavior, including smearing feces over his cell walls and on his suicide watch gown. (ECF No. 48-1, ¶¶ 19-20.)

On February 15, 2011, Lubus checked on Evans, who was at that time in a restraint chair. (ECF No. 48-1, ¶ 20.) He noted that Evans asked, among other things, for food and stated that his head was tender. (*Id.*) Lubus also wrote that Evans was not in distress and presented as calm. (*Id.*)

Evans states that on February 17, 2011, Dr. Stonefeld shared a fax from Christina Schultz with the "whole health department in general." (ECF No. 48-1, ¶ 22.) Schultz stated in the fax that a Dawn Schott at Mendota had received a letter from the district attorney that said that Evans "spoke with his cellmate . . . and inquired about how [to] 'fake being crazy'" (*Id.*) The fax went on to note that Evans had been scheduled as a priority to go to Mendota, and he was believed to be "admitted next week." (*Id.*) Evans says that Dr. Stonefeld responded to the fax by finding that it supported Evans's diagnoses of malingering. (*Id.*) He "suggested that Mendota be cancelled for [Evans]." (*Id.*) Evans states that Dr. Stonefeld "revealed his intentions" by noting at some point on that same day that Evans purposefully groped a female correctional officer and thus "show[ed] clear decision-making processes and control of his behavior." (*Id.*, ¶ 23.)

The next day, February 18, 2011, Joy Parks, another psychology social worker, was called to Evans's cell because Evans was "banging his head on the cell door." (ECF No. 48-1, ¶ 24.) He became combative when officers attempted to remove him

10

from his cell. (*Id.*) He was "tazed and sprayed." (*Id.*) Parks noted that Evans asked for food and clothes when she tried to speak with him. (*Id.*)

Evans alleges that on March 28, 2011, he engaged in a physical altercation with prison officials Abie Douglas, Todd Dickau, and Kenyon Kirksey, resulting in these officials cutting off his clothes and placing him "on a restraint bed with only his underwear and socks for approximately four hours." (ECF No. 48-1, ¶ 27.) Thereafter, Douglas, Dickau, and Kirksey returned Evans to his cell but left him completely naked and "placed in mechanical restraints-handcuffs," a methodology called "restraint watch." (*Id.*, ¶ 28.)

Evans further alleges that he was humiliated when female nurses Turner, Sanchez, Edward, Exum, and Gajdosik "pull[ed] Evans out of his cell in restraints to wash his 'nude body.'" (ECF No. 48-1, ¶ 31(c).) He states that these unnecessary and invasive baths were authorized by Dickau and Douglas. Evans also says that the incidents were recorded. (*Id.*)

Evans states that on April 21 and 23, 2011, a John Doe third shift staff member noticed Evans was chewing gum when inmates are not allowed gum. (ECF No. 48-1, ¶ 31(d).) The Doe officer assumed it was the same gum given to Evans the night before by Sgt. Fergot. (*Id.*) Evans states that he told the John Doe staff member that he received the gum from a first shirt sergeant in exchange for his "agree[ment] to stay in the restraints." (*Id.*) Evans states that the sergeant was either Kyle Dulan or Thomas Trattin. (*Id.*)

11

Evans goes on to generally allege that from January 10, 2011, to May 30, 2011, he was "locked in his cell with restraints on his person." (ECF No. 48-1, ¶ 31(a).) He states he was made to "sleep, eat, defecate, urinate, stay awake, and whatever else . . . in an empty cell over 50 times for days at a time." (*Id.*) He says this requirement was approved by Dr. Stonefeld and all the other defendants except for Vance, Smith, and Kirksey. (*Id.*) He asserts that Vance, Smith, and Kirksey merely placed him in the restraints when he was sometimes nude or in a suicide watch gown. (*Id.*) He says that the cell he had been placed in did not have "a mattress, pillow, sheets, blanket, no hygiene products or toilet paper, no writing materials, reading materials." (*Id.*, ¶ 31(f).) He states he "received no mail, no phone calls, no outside the cell exercise, and there was no way for [him] to workout while in restraints." (*Id.*) He further alleges that two of his family visits were cancelled for various alleged reasons. (*Id.*) He says that Lt. John Nelson cancelled a visit with his family by giving them a false reason for the cancellation. (*Id.*, ¶ 31(h).)

Evans asserts he ate feces and drank toilet water "partially because of his mental illness, but also because [he] was . . . deprived of food and water." (ECF No. 48, ¶ 31(i).) He states that Sgt. Fergot and Captain Rawolinski specifically authorized the water in his cell to be turned off. (*Id.*, ¶ 31(e)) He says that all the defendants were responsible for his conditions of confinement and the alleged punishment because they either authorized or were aware of the conditions he endured. (*Id.*, ¶ 31(f).)

Evans says that the defendants assert the restraints were put in place to "prevent[] [him] from 'banging his head against the cell door and cell wall, eating feces, drinking toilet water, and removing a bandage on [Evans] leg and picking at a sore on [his] leg.'" (ECF No. 48-1, ¶ 31(a).) Evans asserts that he, however, was still able to do these things with the restraints. (*Id.*)

Evans further alleges that Dr. Stonefeld, Klassy, Felten, Lindemann, Najam, Williams, Lubus, Watts, and Barillari assessed him as malingering although they saw the harm being done to his wrists by the restraints but did nothing. (ECF No. 48-1, ¶ 31(b).) On March 29, 2011, Lubus noted Evans's "hands cuffed and wrists [were] somewhat reddened." (*Id.*, ¶ 31(g).) It was then that Evans was taken to Froedtert Hospital for treatment. (*Id.*)

Evans asserts that Dickua, James Novotny, Cassandra Joshua, Dulan, Matthew Paradis, Trattin, Sarah Wronski, Legers Lester, Mary Sawczuk, Liebenthal, Fergot, Douglas, Johns Nelson, Robert Worzalla, Calson, Elliott, Jonas, Rawolinski, keven Nyklewicz, John Cummings, Dr. Stonefeld, Rachele Klassy, Beverly Felten, Lindermann, Najam, James William, Lubus, Watts, Gregory Barillari, Aimee Turner, Florentine Sanchez, Oneida Edward, and Danielle Gajdosik used their authority to punish him from January 10, 2011 to May 30, 2011. (ECF No. 48-1, ¶ 30.) He states that Vance, Smith, and Kirksey only observed his behavior to report it to their supervisor. (*Id.*) Evans seeks compensatory and punitive damages.

2. *Analysis*

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In the context of claims regarding medical mistreatment, pretrial detainees should be afforded the benefit of objectively reasonable conduct by their custodians. In stating such a claim, a plaintiff must allege that the defendants acted "purposefully, knowingly, or perhaps even recklessly" and that their conduct was "objectively unreasonable." *Miranda v. Cty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018).

As alleged, Evans may proceed with Fourteenth Amendment Due Process claims regarding his medical treatment against Dr. Stonefeld, Najam, Lubus, MeWhorter, Cales, Dr. Slattery, Parks, Klassy, Felten, Lindemann, Williams, Watts, and Barillari. Evans asserts that from a young age he was diagnosed with various mental illnesses. He adds that, just prior to his incarceration, he was on various medications for his mental illnesses. The plaintiff states that his medical records note that his failure to take those medications could lead to him exhibiting abnormal behavior. Despite being made aware of his mental health history either by Evans's request for his medication, by Evans's mother's phone call, or by seeing or at the least having access to his medical history report, these defendants assessed Evans on various occasions as malingering or acting out. Evans does not allege that he was provided any medical treatment but rather was continuously physically restrained.

The court also finds that Evans may proceed against Douglas, Dickau, Kirksey, Fergot, Dulan, Trattin, Rawolinski, Nelson, Vance and Smith for subjecting Evans to

14

deplorable, punishing conditions while he was being housed as a pretrial detainee at the jail. In assessing such a claim, the court considers whether Evans has sufficiently alleged that his confinement conditions were objectively serious as to deprive him of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Miranda v. County of Lake*, 900 F.3d 335, 352-353 (7th Cir. 2018) (holding that under *Kingsley v. Hendrickson*, —— U.S. ——, 135 S. Ct. 2466 (2015), a pretrial detainee need only establish that the defendant's conduct was objectively unreasonable). Some conditions of confinement violate the constitution when, combined, their "mutually enforcing effect [] produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citations omitted).

As alleged, Douglas, Dickau, Kirksey left Evans naked in restraints for four hours, and Vance, Smith, and Kirksey placed him in restraints in the nude or in a suicide gown despite Evans not being on suicide watch. Evans states that during these times he was made to "sleep, eat, defecate, urinate, stay awake" and that he ultimately suffered injury to his wrist from the restraints. Additionally, Evans says that Fergot and Rawolinski deprived him of water and that Nelson cancelled one of his visits with his family under false pretenses. Thus, the court finds Evans may proceed with Fourteenth Amendment due process claims against that Douglas, Dickau, Kirksey, Fergot, Rawolinski, Nelson, Vance and Smith regarding the conditions of his confinement.

15

The court, however, does not find that the allegations against Turner, Sanchez, Edwards, Exum, Gajdosik, Dickau, Douglas, and Liebenthal regarding the cleaning of Evans's person are constitutional violations. While likening such an act to a strip search, Evans's allegations do not suggest that these defendants bathed him with the "intent to harass, humiliate, or inflict psychological pain." They bathed him merely to clean him. *See Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir.2003) (noting that a prisoner states a constitutional claim when he plausibly alleges that the strip-search in question was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security in prisons.) Indeed, he recognizes he needed the baths. Although he goes on to state that he could have bathed himself, his third amended complaint's refrain is that he was mentally unstable. He even acknowledges that he smeared his own feces over himself as well as ate it. Thus, Evans has not shown that Turner, Sanchez, Edwards, Exum, Gajdosik, Dickau, Douglas, and Liebenthal's actions were unconstitutional, and so the court recommends that he not be allowed to proceed on this claim against them.

As to Dr. Stonefeld authorizing Evans's conditions of confinement, and all the other defendants authorizing or being aware of his conditions or the medical mistreatment he experienced, the court recommends that Evans may not proceed against them. These are vague and, more importantly, conclusory allegations. Legal conclusions must be supported by factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 679 (2007).

16

**IT IS THEREFORE ORDERED** that Evans's motion to amend his complaint (ECF No. 48) is **GRANTED**. Evans's proposed third amended complaint is now the operative complaint.

**IT IS RECOMMENDED** that James Novotny, Cassandra Joshua, Kyle Dulan, Matthew Paradise, Thomas Trattin, Sarah Wronski, Legers Lester, Mary Sawczuk, Robert Worzalla, Lt. Carlson, Cpt. Elliott, Cpt. Jonas, Kevin Nyklewica, Sgt. Liebenthal, Aimee Turner, Florentine Sanchez, Oneida Edwards, Carolyn Exum, Danielle Gajodsik, and John Cummings be **DISMISSED** as defendants.

**IT IS ORDERED** that the defendants' motion to stay the amended scheduling order (ECF No. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between Milwaukee County and this court, copies of plaintiff's third amended complaint and this order and recommendation be electronically sent today to Milwaukee County for service on defendants Todd Dickau, Sgt. Fergot, Abie Douglas, John Nelson, Tussell MeWhorter, Captain Rawolinski, Donald Stonefeld, Rachele Klassy, Beverly Felten, Bridgette Lindemann, Tanya Najam, Joy Parks, James Williams, Chris Lubus, Tina Watts, Gregory Barillari, Jieire Vance, Calvin Smith, and Kenyon Kirksey.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between Milwaukee County and this court, defendants Todd Dickau, Kyle Dulan, Thomas Trattin, Sgt. Fergot, Abie Douglas, John Nelson, Tussell MeWhorter, Captain Rawolinski, Donald Stonefeld, Rachele Klassy, Beverly Felten, Bridgette

17

Lindemann, Tanya Najam, Joy Parks, James Williams, Chris Lubus, Tina Watts, Gregory Barillari, Jieire Vance, Calvin Smith, and Kenyon Kirksey shall file a responsive pleading to the third amended complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a new scheduling order setting deadlines for discovery and dispositive motions.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation. Objections are to be filed in accordance with the case filing procedures set forth in this order. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 27th day of March, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge